UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:07CV9-EHJ

KIMBERLY HENNING                                                                            PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                          DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Kimberly Henning ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be affirmed.

PROCEDURAL HISTORY

On June 17, 2004, Claimant filed application for disability insurance benefits and supplemental security income payments, alleging that she became disabled as of June 17, 2002. After a hearing, Administrative Law Judge William Reamon ("ALJ") determined that plaintiff's degenerative disc disease and diabetes were severe impairments, but that they did not prevent her from performing her past relevant work as a cashier and an assembler. This became the final decision of the defendant Commissioner when the Appeals Council denied review on November 30, 2006.

STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

ARGUMENTS ON THIS APPEAL

Plaintiff contends that the ALJ erred in rejecting the opinions of treating physicians Drs. Sayed, Nadar, and Cannon. In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court confirmed the weight ordinarily due the opinion of a treating physician. Wilson also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also Soc.Sec.Rul. 96-2p.

Dr. Sayed stated in October of 2005 that Ms. Henning's treatment over the course of four years had been primarily for diabetes and related condition, but that she also had "multiple other problems." Tr. 330. Dr. Sayed opined that Ms. Henning would need to spend two to three hours lying down "over an eight-hour day." Id. Dr. Sayed believed she suffers from diabetic neuropathy (resulting in pain and numbness in both legs), although nerve conduction tests had not been performed to confirm this. Tr. 330-331.

The ALJ rejected these limitations because Dr. Sayed's notes "are very cursory and do not document the level of limitation he outlines." Tr. 23. While Dr. Sayed's notes are somewhat difficult to read, they are not accurately described as "cursory." Her first visit, July of 2001, preceded her alleged date of disability by a year. At that time, Dr. Sayed took a very careful history, performed a full physical examination, and ordered lab tests. He was concerned at that time about her fatigue, and noted several symptoms suggestive of sleep apnea. He prescribed Celebrex for her foot pain. Tr. 262.

When she returned a month later, Dr. Sayed was still concerned about her foot pain. His concern about her breathing problems led to a diagnosis of chronic obstructive pulmonary disease. He also prescribed BuSpar, a medication for Generalized Anxiety Disorder. Tr. 261. In January of 2002, he added Zoloft. Tr. 259. In April of 2007, he noted increased leg swelling and again noted her shortness of breath. Tr. 257. In July of 2002, he replaced the Zoloft with Effexor. Tr. 256. In October 2008, he recorded that she "wants to quit job" and that she is "still depressed." He added Wellbutrin. Tr. 255. By December of 2003, and March of 2004, Dr. Sayed's list of her problems had extended considerably (including a notation of noncompliance regarding diabetes treatment), but it still did not include any explicit mention of radiculopathy, diabetic neuropathy, restriction on having her feet on the floor, or need to lie down to relieve pain. The problems with her feet he described as a fungal infection of the nails (onychomycosis) Tr. 253, 254. In July of 2004, Dr. Sayed's notes record for the first time Ms. Henning's complaints of difficulty walking, and note his impression of lumbar radiculopathy. He ordered an MRI of the lumbar spine.[1] Tr. 252.

---

[1] Although several doctors have referred to this MRI, the record does not include the MRI report itself.

In December of 2004, Dr. Sayed ordered skull and cervical spine x-rays. Tr. 250.

This analysis of the treatment records demonstrates that while Dr. Sayed has indeed treated plaintiff for a number of troublesome conditions, the treatment notes do not reflect that plaintiff complained of a need to lie down for several hours a day, nor that he advised her to do so. That is, the office notes "do not document the level of limitation he outlines," as stated by the ALJ. What is important to note, however, is that the ALJ's bare conclusory statement does *not* comply with the requirement for specific reasons for rejecting a treating physician's opinion; it would have been a simple matter for the ALJ to point to the nature of Ms. Henning's complaints to Dr. Sayed and to the nature of Dr. Sayed's treatment. Defendant is placed on notice that in the future, bare unsupported statements such as that made by the ALJ concerning Dr. Sayed's opinion will be treated as legal error.

Dr. Nadar, a pain management specialist, provided a statement dated January 10, 2006. He stated that Ms. Henning was referred to him the previous month because of "chronic low back pain and management of her medical problems." He stated that he reviewed an October 2005 MRI, which showed disc herniation and spinal stenosis, and he opined that her complaints of radiating lumbar pain were consistent with the MRI findings. Dr. Nadar stated that her condition would prevent her from being on her feet more than two hours total in an eight hour day, and would prevent her from sitting more than four hours total in an eight hour day. He believed she would need to lie down two to three hours out of an eight hour day, although he suggested this was not solely due to her back pain but her other medical problems as well. Tr. 368-369.

The administrative record does not include any treatment notes from Dr. Nadar. The short period of time between the initial referral (December 12, 2005) and the January 10, 2006 statement

suggests that little in the way of a treatment relationship could have been established. Dr. Nadar's statement does not discuss any treatment plan, and there is really nothing in the record to indicate that Dr. Nadar fits the description of a "treating physician."

Nonetheless, the ALJ gave Dr. Nadar the benefit of the doubt and approached his statement as that of a treating physician. He rejected the statement in part because of the absence of any treating notes, and in part because of Dr. Nadar's reference to disc herniation. The ALJ stated that only disc *bulging* rather than *herniation* had been demonstrated; furthermore, the type of problem alleged by Ms. Henning as reported by Dr. Nadar was a radiating pain indicative of pressure on the nerve from a bulging disc.

Dr. Cannon, a neurosurgical consultant, first saw Ms. Henning on July 23, 2004, on referral from Dr. Sayed. At that time she told the physician's assistant that she had generally good health, but experienced fatigue and headaches. On the P.A.'s exam, straight leg raising was positive on the right for low back pain, negative on the left; on Dr. Cannon's exam, however, straight leg raising was negative bilaterally. Range of motion in the back was somewhat diminished, but no kyphos, gibbous or scoliosis was noted. Dr. Cannon particularly noted the significance of the lack of foot drop (extensor hallucis longus – EHL – strength was 5 of a possible 5 on both left and right). He recommended conservative treatment: weight loss, nonsteroidal anti-inflammatory drugs, and slow increasing physical activity. Tr. 207.

Dr. Cannon examined Ms. Henning again on November 9, 2005 before providing a November 18, 2005 statement that "Ms. Henning's complaints of pain have been consistent for the past three years." Tr. 364. On the 2005 exam, the findings were essentially unchanged from 2004 (negative straight leg raising, EHLs 5/5 bilaterally, patient moves on and off table without

assistance, no atrophy, etc.). Tr. 335. Dr. Cannon reported that the MRI demonstrated "some spondylitic change at multiple levels with some foraminal stenosis at 4-5 bilaterally." Tr. 334.

Dr. Cannon stated that he concurred with Dr. Sayed's report and recommendations. Tr. 364. In declining to accept the extreme limitations Dr. Cannon thereby adopted, the ALJ noted that Dr. Cannon's examination findings were "unremarkable" and "almost normal." In addition, in evaluating Dr. Sayed's limitations (as well as Dr. Cannon's and Dr. Nadar's adoption of his report), the ALJ referred to the April 18, 2005 note of Dr. Quadar, who reported essentially normal exam findings, and who also stated that he could not "give her a paper indicating that she is disabled." Tr. 304.

The Court finds substantial justification for the ALJ's decision to severely limit the weight given the opinions of these three physicians concerning Ms. Henning's limitations. The doctors' notes do not support the extensive restrictions imposed; furthermore, both Dr. Nadar and Dr. Cannon placed considerable reliance on the report of Dr. Sayed, whose office notes, as noted above, fail to support the opinion he offered.

Plaintiff next contends that the ALJ committed legal error in failing to fully credit her testimony. A significant consideration in the evaluation of pain is the credibility of the claimant, given that tolerance of pain is very much an individual matter. Villareal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987). "Determination of credibility related to subjective complaints of pain rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is *charged with the duty of observing a witness's demeanor and*

6

*credibility.*" Walters v. Commissioner, 127 F.3d 525, 531 (6th Cir. 1997) [emphasis added] .

An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). Stated another way, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997).

Nonetheless, the ALJ's credibility assessment must be supported by substantial evidence. Walters v. Commissioner, 127 F.3d 525 (6th Cir. 1997). Furthermore, if the ALJ rejects the claimant's testimony as not credible, he or she must state reasons for doing so. Auer v. Secretary, 830 F.2d 594, 595 (6th Cir. 1987).

The ALJ found that Ms. Henning's statements concerning intensity, duration and limiting effects of her symptoms were not entirely credible. He noted that she told Dr. Cannon that she had numbness and weakness in her arms; Dr. Cannon stated that he could identify no physiological explanation for such complaints. Tr. 207. The ALJ reiterated the benign nature of the physical examinations of record. The ALJ noted inconsistencies in Ms. Henning's statements regarding her use of illegal drugs. Finally, he observed the notations of her non-compliance with medical treatment regimens, her unwillingness to give up smoking, and her failure to lose weight despite medical advice to do so. The Court finds no error in the ALJ's analysis of her credibility.

Finally, claimant argues that substantial evidence fails to support the ALJ's decision that her conditions, considered in combination, were not disabling. In support of this argument, counsel contends that "Ms. Henning has two medical problems that the ALJ acknowledges are severe along

with multiple other impairments and symptoms." F&LS at 8. While it is true that Ms. Henning alleges a number of problems, she has failed to carry her burden of demonstrating that her breathing problems, obesity, diabetes, etc., impose functional limitations not considered by the ALJ. The Court sees no error.

 An order in conformity has this day entered.